## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| CHARLES C. FREENY III, BRYAN E. FREENY, and JAMES P. FREENY,<br><br>Plaintiffs,<br><br>v.<br><br>FOSSIL GROUP, INC.,<br><br>Defendant. | Case No. 2:18-cv-00049-JRG-RSP |

## PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 1

    A. "request authorization code" (claim 90) ................................................................. 1

    B. "second signal being different from the first signal" (claim 90) ........................... 1

    C. "low power communication unit" (claims 91, 107) ................................................ 2

    D. "the [request authorization code]" (claim 90) ......................................................... 3

    E. "means for communicating audio and video information in a format perceivable by an individual located adjacent to the portable housing" (claims 94, 110) ............................... 5

    F. "means for recording the messages and data" (claim 106) ..................................... 7

    G. Claim 90 Is Not a Mixed Apparatus and Method Claim ....................................... 8

    H. Claim 91 Is Not Indefinite ...................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Cacace v. Meyer Mktg. (Macau Commercial Offshore) Co.*, 812 F.Supp.2d 547 (S.D.N.Y. 2011) ................................................................................................................. 5

*Clare v. Chrysler Grp., LLC*, 819 F.3d 1323 (Fed. Cir. 2016) ...................................................... 2

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) .................................................. 4

*Hand Held Prods., Inc. v. Amazon.com, Inc.*, 2014 WL 2873902 (D. Del. June 24, 2014) ........... 5

*Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-cv-00055-JRG-RSP, 2017 WL 2190103 (E.D. Tex. May 17, 2017) ................................................................... 8

*In re Aoyama*, 656 F.3d 1293 (Fed. Cir. 2011) ............................................................................. 7

*In re Payless Cashways, Inc.*, 215 B.R. 409 (Bankr. W.D. Mo. 1997) ........................................ 10

*In re Varma*, 816 F.3d 1352 (Fed. Cir. 2016) ................................................................................ 4

*MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307 (Fed. Cir. 2017) .......................... 9

*Plano Encryption Techs., LLC v. Alkami, Inc.*, 2:16-cv-01032, Dkt. 168 (E.D. Tex. Aug. 23, 2017) ......................................................................................................... 4, 5

*Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331 (Fed. Cir. 2011) .................................. 9

*Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094 (Fed. Cir. 2014) ........................................... 6

*Shire LLC v. Abhai, LLC*, 219 F.Supp.3d 241 (D. Mass. 2016) .................................................... 2

*TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290 (Fed. Cir. 2008) .................................... 4

*Traxcell Techs., LLC v. Huawei Techs. USA Inc.*, No. 2:17-cv-00042-RWS-RSP, 2019 WL 121966 (E.D. Tex. Jan. 7, 2019) ..................................................................... 9

*WesternGeco L.L.C. v. ION Geophysical Corp.*, 876 F.Supp.2d 857 (S.D. Tex. 2012) ................. 5

## I.   INTRODUCTION

Fossil's claim construction arguments are not supported by the intrinsic or extrinsic evidence. And while the Freenys have shown the definiteness of the '443 patent claims through intrinsic evidence as well as expert testimony, Fossil relies on pure attorney argument, which is insufficient to meet its burden of proving indefiniteness by clear and convincing evidence. The Court should therefore reject Fossil's arguments and adopt the Freenys' proposed constructions.

## II.   ARGUMENT

### A.   "request authorization code" (claim 90)

| The Freenys' Proposed Construction | Fossil's Proposed Construction |
|---|---|
| "a code that authorizes access to a predetermined service" | "a code that activates a predetermined service upon receipt" |

Fossil fails to address any of the passages in the '443 specification cited by the Freenys showing that authorization is a separate process from activation of a service. (*See* Opening Br. 5-7). Thus, the undisputed intrinsic evidence supports the Freenys' proposed construction.

Dr. Sirovica did not admit that activation always occurs after authorization. Rather, the testimony quoted by Fossil shows that Dr. Sirovica was answering a question about a particular example, which is why he prefaced his answer with "[i]n this circumstance." (Fossil Br., Ex. A at 17:6-19). The other testimony quoted by Fossil also does not support its position, but rather shows that code validation and service activation are separate processes. (*See id.* at 73:19-74:1).

### B.   "second signal being different from the first signal" (claim 90)

| The Freenys' Proposed Construction | Fossil's Proposed Construction |
|---|---|
| "second signal transmitted through a different frequency band or protocol than the first signal" | No construction necessary |

This Court held in *Freeny v. Apple* that, in the context of the related '744 patent, "different" signals has a specific meaning – namely, signals using different frequency bands or protocols. (*See* Opening Br. 8). The Freenys have reasonably relied on this prior construction,

and Dr. Sirovica confirmed that this is what "different" signals means in the context of the '443 claims.  (*See* Sirovica Decl., ¶¶25-28).  Fossil incorrectly argues that no construction is necessary here because those of ordinary skill as well as a jury would understand "different" signals to mean "signals that are not the same."  But this simply begs the question: what does it mean for two signals to not be the same?

Fossil's reliance on a portion of the specification that refers to differences in "signal strength" is also incorrect.  That passage relates to a different disclosed invention, the "AWAU," and therefore has nothing to do with claim 90.  (*See* '443 patent, at 13:24-29).  In addition, Fossil's attempt to distinguish the prior construction in *Freeny v. Apple* based on the fact that the disputed term there referred to different signal "types" lacks merit.  Fossil itself concedes that the passages in the specification discussing different signal types provide guidance to those skilled in the art as to what "different" means.

Finally, Fossil's claim differentiation argument fails because "different types of . . . communication signals" appears only in the '744 patent claims, and not the '443 patent.  The use of slightly different verbiage in the '443 patent does not mean a difference in scope.  *See Shire LLC v. Abhai, LLC*, 219 F.Supp.3d 241, 245 (D. Mass. 2016) ("Differently worded but similar claims in related patents, however, may still be construed identically where those patents share a specification and other technical details."); *Clare v. Chrysler Grp., LLC*, 819 F.3d 1323, 1330 (Fed. Cir. 2016) ("the doctrine of claim differentiation is not as strong across related patents").

### C.  "low power communication unit" (claims 91, 107)

| The Freenys' Proposed Construction | Fossil's Proposed Construction |
|---|---|
| "communication unit having a power for transmission of up to a maximum of several hundred feet" | No construction necessary |

Fossil's assertion that the Freenys' proposed construction of "low power communication

unit" would improperly import a particular embodiment into the claim language lacks merit. This Court obviously disagreed when it construed "low power" to mean "having a power for transmission of up to a maximum of several hundred feet." In addition, Fossil's argument that no construction is necessary because everyone understands the term "low power communication unit" is completely conclusory and unsupported.

    D.    "the [request authorization code]" (claim 90)

| The Freenys' Proposed Construction | Fossil's Proposed Construction |
|---|---|
| No construction necessary, other than the proposed construction for "request authorization code" | "the same [request authorization code]" |

The Freenys have shown that claim 90 is not limited to using an identical request authorization code on both the first and second signal. Fossil now argues that if the claimed device includes multiple authorization codes, all of those codes must be transmitted on both the first and second signals.[1] But the specification discloses a range of example proximity service units receiving the codes, including an ATM and a vehicle control system. (*See* '443 patent, at 32:15-23). Fossil's proposed construction would require that the claimed invention needlessly send the same codes to an ATM machine and a vehicle, even though an ATM code would have no use in a vehicle control system, and vice versa. Unsurprisingly, Fossil can point to no support in the specification for this superfluous-signal requirement. As noted by Dr. Sirovica, the goal of the invention is to have a single device that can replace the functions of multiple authorization devices to communicate with a variety of disparate systems. (*See* Sirovica Decl., ¶40). There is no reason for the proximity authorization unit to send a request authorization code to a system that is not designed to utilize that code and the specification does not teach any such thing.

---

[1] Fossil originally argued by letter to counsel, that, in Fossil's view, claim 90 required that only one code be sent on both signals – a nonsensical read that would have prevented the invention from activating multiple services, as designed.

Fossil also incorrectly argues that, under the Freenys' proposed construction, there is indefiniteness because "the patent provides no guidance to know which of the several codes are sent on the first signal, and which of the several codes are sent on the second signal, in order for infringement to occur." (Fossil Br. 11). But there is no ambiguity because it does not matter which code is sent on which signal. Rather, claim 90 simply requires at least one code sent on each signal. Also, Dr. Sirovica never agreed that whether a code satisfies the requirements of claim 90 is entirely subjective. Rather, he testified that the technical specification for the system would provide this information. (*See* Fossil Br., Ex. A at 35:13-19; *see also id.* at 20:2-19).

Fossil's reliance on *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290 (Fed. Cir. 2008) is misplaced. In *TiVo*, the court construed "assembl[ing] said video and audio components into an MPEG stream" to mean assembling those components into only one stream because the patent specification required it. *See id.* at 1303-04. Here, there is nothing in the specification requiring the proximity authorization unit to use the same request authorization codes on all signals. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1342 (Fed. Cir. 2016), likewise involved a situation where the specification clearly limited the invention to the use of a single logical table, and is inapposite for the same reason.

*In re Varma*, 816 F.3d 1352 (Fed. Cir. 2016), is also distinguishable. There, the court held that the claim limitation "a statistical analysis request corresponding to two or more selected investments" could not be met by two separate requests where each request has just one selected investment. *See id.* at 1362-63. That makes sense given the plain requirement of the "corresponding to" language in the claim. *See id.* No such language exists in claim 90.

*Plano Encryption Techs., LLC v. Alkami, Inc.*, 2:16-cv-01032, Dkt. 168 (E.D. Tex. Aug. 23, 2017), is inapposite for the same reason. In *Plano*, this Court reasonably construed "a storage medium having stored therein a plurality of programming instructions" to mean just one

PLAINTIFFS' REPLY CLAIM
CONSTRUCTION BRIEF
CASE NO. 2:18-cv-00049-JRG-RSP

4

storage medium storing the instructions. *See id.* at 18-22. That is a natural reading "having stored therein." No such limiting language exists in claim 90. In addition, the construction in *Plano* was supported by extrinsic evidence, whereas here Fossil has none. *See id.* at 21.

### E. "means for communicating audio and video information in a format perceivable by an individual located adjacent to the portable housing" (claims 94, 110)

| The Freenys' Proposed Construction | Fossil's Proposed Construction |
|---|---|
| This phrase should be construed under 35 U.S.C. § 112(f). | Subject to 35 U.S.C. § 112(f). |
| **Function:** Communicating audio and video information in a format perceivable by an individual located adjacent to the portable housing | **Function:** Communicating audio and video information in a format perceivable by an individual located adjacent to the portable housing |
| **Structure:** Visual and audio outputs such as those found on pagers, cell phones, and PDAs | **Structure:** Indefinite |

Fossil fails to show that there is insufficient structure disclosed in the '443 specification for the "means for communicating audio and video information." Dr. Sirovica identified specific examples in the specification of corresponding structures for communicating audio and video information: the LCD display screens and speakers on the Palm Pilot VII and Nokia 9000 devices. (*See* Sirovica Decl., ¶¶46-51). Fossil offers no contradictory evidence, relying instead on pure attorney argument that this limitation is indefinite. But "mere attorney argument is insufficient to establish invalidity based on indefiniteness." *Cacace v. Meyer Mktg. (Macau Commercial Offshore) Co.*, 812 F.Supp.2d 547, 561 (S.D.N.Y. 2011). *See also Hand Held Prods., Inc. v. Amazon.com, Inc.*, 2014 WL 2873902, at *16 (D. Del. June 24, 2014); *WesternGeco L.L.C. v. ION Geophysical Corp.*, 876 F.Supp.2d 857, 875 (S.D. Tex. 2012).

Fossil also incorrectly relies on Dr. Sirovica's deposition testimony. The fact that there may have been a variety of PDAs, cell phones, and pagers at the time of the invention with different functionality is irrelevant. Rather, the issue is whether one of ordinary skill would

understand what the '443 patent means when it refers to visual and audio display outputs such as those found on these devices. Dr. Sirovica confirmed that one of ordinary skill would have this understanding. (*See* Lin Decl.,[2] Ex. A, at 52:7-15). Also, Dr. Sirovica testified that he did know of some pagers at the time of the invention with video functionality. (*See id.* at 48:15-49:5).

Even if the Court were to find that the specification does not adequately disclose visual or audio outputs on pagers, that would not result in indefiniteness. A mean-plus-function limitation is indefinite only if a court is "unable to identify *any* corresponding structure, material, or acts described in the specification . . . ." *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1097 (Fed. Cir. 2014) (emphasis added). The '443 specification certainly discloses the LCD display screens and speakers of the Palm Pilot VII and Nokia 9000 as corresponding structures. Thus, at a minimum, these disclosed examples are corresponding structure for this limitation.

Finally, Fossil incorrectly argues that the Palm Pilot VII and Nokia 9000 devices are not sufficiently linked as the corresponding structure. Dr. Sirovica opined that there was sufficient linkage. (*See* Sirovica Decl., ¶¶45-51). Fossil responds with nothing other than unsupported attorney argument. Moreover, the specification specifically refers to the video and audio functions of the Palm Pilot VII and Nokia 9000:

> The rest of the elements shown in FIG. 6 represent those currently available in most mobile computers with wireless capability such as the ***Palm Pilot VII*** wireless note book computer or ***Nokia 9000*** series digital phones. Elements 650 and 660 represent ***the audio and video (display) functions currently available*** and element 680 represents the menu select able control functions along with special function elements 630 and 640.

('443 patent, at 9:38-45) (emphasis added). In addition, this passage relates to Figure 6, which shows a device that is virtually identical to the proximity authorization unit shown in Figure 32:

---

[2] References herein to "Lin Decl." refer to the supporting declaration of Richard C. Lin filed concurrently with this reply brief.




Figure 6                                                                 Figure 32

Thus, the specification clearly associates the video and audio structures of the Palm Pilot VII and Nokia 9000 with the function of communicating video and audio information to the user.[3]

### F.   "means for recording the messages and data" (claim 106)

| The Freenys' Proposed Construction | Fossil's Proposed Construction |
|---|---|
| This phrase should be construed under 35 U.S.C. § 112(f). | Subject to 35 U.S.C. § 112(f). |
| **Function:** Recording the messages and data | **Function:** Recording the messages and data |
| **Structure:** A computer memory unit | **Structure:** Indefinite |

Fossil's argument that "a computer memory unit" is overly broad and vague fails for several reasons. First, the fact that the term "a computer memory unit" may encompass different types of memory is irrelevant. Rather, the relevant question is: for this limitation, would one of ordinary skill have understood "what structure corresponds to the means limitation." *In re Aoyama*, 656 F.3d 1293, 1298 (Fed. Cir. 2011). Dr. Sirovica confirmed that one of ordinary skill would have understood this. (Sirovica, Decl., ¶59). Fossil offers no contradictory evidence, relying instead on pure attorney argument, which as discussed is insufficient.

Moreover, Fossil incorrectly asserts that the '443 patent fails to identify any specific memory structure. The specification provides specific examples of computer memory, such as "RAM and permanent memory elements" as well as Motorola, TI (Texas Instruments), and

---

[3] For the same reasons discussed in this section, the limitation "means for playing back the messages and data" in claim 106 also is not indefinite.

PLAINTIFFS' REPLY CLAIM                                                                                    7
CONSTRUCTION BRIEF
CASE NO. 2:18-cv-00049-JRG-RSP

Ericsson microprocessors with memory to store data. (*See* '443 patent at 6:17-19, 34:59-35:4). Thus, there are numerous memory structures disclosed in the specification. (*See* Sirovica Decl., ¶¶55-59). Finally, the portions of the specification that Fossil claims to be inconsistent are not actually inconsistent, but rather describe different invention embodiments (*i.e.*, the FIG. 30 and FIG. 32 embodiments). (*See* '443 patent, at 34:67-35:1, 37:8-9).

### G. Claim 90 Is Not a Mixed Apparatus and Method Claim

Fossil incorrectly asserts that, because the parties agree that the preamble is limiting, the Freenys have conceded that the claim is directed to a method. Not so. The mere fact that the language "each of the proximity service units providing a predetermined service" appears in the limiting preamble does not mean that the claim is directed to a method. Rather, the plain language of claim 90 states that the claim is directed to "[a] proximity authorization unit." Moreover, "each of the proximity service units providing a predetermined service" describes a property of the proximity service units, which are different devices in the network that claim 90 does **not** cover. Thus, this is just like the situation in *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-cv-00055-JRG-RSP, 2017 WL 2190103 (E.D. Tex. May 17, 2017), where the disputed language ("wherein the data forwarding tunnel identifier . . . is used by the LTE access network") did not create an *IPXL* problem because it did not describe an action to be performed by the claimed device (the "MME"), but rather by an object existing outside of the claimed device ("the LTE access network"). *See id.* at *18.

Also, contrary to Fossil's assertion, the Court in *Huawei* never found that the "wherein" clause did not constitute a limitation of the claim. Rather, the Court found that the clause was in fact a limitation that defined "the functional capability of the tunnel identifier being used." 2017 WL 2190103 at *18. In addition, the fact that claim 90 does not refer to any actions by a "user" is not a red herring, but rather highly relevant, as this Court noted in *Huawei*. *See id.*

*Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331 (Fed. Cir. 2011), is inapposite. There, the claim recited a "data transmitting device" comprised of four structural elements and a final element of "transmitting the trellis encoded frames." *See id.* at 1339. The court held the claim indefinite under *IPXL* because "the final element is a method." *Id.* Here, claim 90 does not have any separate method element. Rather, each verb in the claim is tied to a structure (*i.e.*, the proximity service units, the computer unit, and the communication unit). This tie to structure distinguishes claim 90 from *Rembrandt*. *See MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1316 (Fed. Cir. 2017) ("[U]nlike the claims in *Rembrandt*, the functional language here does not appear in isolation, but rather, is specifically tied to structure . . . .").

Also, Fossil has not even attempted to distinguish this Court's *Traxcell* decision or the Federal Circuit decisions in *MasterMine*, *UltimatePointer*, or *Microprocessor Enhancement*. (*See* Freeny Br. 23-25). All of these cases support that the active functional language in claim 90 of "providing," "retrieving," and "outputting" does not create any *IPXL* indefiniteness issues.

Fossil incorrectly argues that, because the patentee used the language "capable of" in some parts of claim 90 but not others, he must have meant to refer to method steps whenever a verb appears without the corresponding language "capable of." This argument fails in light of all of the Freenys' cited cases such as *Huawei*, *MasterMine*, *UltimatePointer*, and *Microprocessor Enhancement* where the use of active verbs without any "capable of" language was held to be not indefinite under *IPXL*. Moreover, the fact that the patentee varied the language in the claim is irrelevant. In *Traxcell Techs., LLC v. Huawei Techs. USA Inc.*, No. 2:17-cv-00042-RWS-RSP, 2019 WL 121966 (E.D. Tex. Jan. 7, 2019), this Court found no *IPXL* issue with a claim that had similar variations, including active verb phrases such as "a second computer ***generating*** a status request" but also capability descriptions such as "a radio tower ***adapted to receive*** . . . signals." *See id.* at *17. Indeed, the '443 patentee used the "capable of" language in claim 90 simply to

distinguish between two different sets of proximity service units – those that are "capable of" receiving a first signal, and those that are "capable of" receiving a second signal. The patentee did not use the "capable of" language to distinguish between capabilities versus steps.

Fossil also incorrectly argues that it cannot know if a device infringes claim 90 unless it is used in an environment in which it and other devices perform certain steps. Not so. As Dr. Sirovica testified, one can determine whether a device infringes claim 90 by reviewing its technical specification. (*See* Fossil Br., Ex. A at 20:2-21:13, 22:2-11, 23:5-15). And just because engineers have to work together to agree on technical specifications does not mean that such specifications are "arbitrary" or "subjective," as Fossil argues.

Finally, Fossil mischaracterizes Dr. Sirovica's testimony when it asserts that he understood claim 90 to be a method claim. In the quoted testimony, Fossil's counsel was asking Dr. Sirovica to describe the "steps" of the authorization process, not whether the claim was directed to a method. (*See* Fossil Br. 24). Dr. Sirovica believes that claim 90 is an apparatus claim only. (*See* Fossil Br., Ex. A at 12:14-16).

### H. Claim 91 Is Not Indefinite

Fossil incorrectly argues that there are two equally reasonable readings of claim 91. "Controlled from a central control center" is a participial phrase that appears immediately after the term "wireless communication network." Thus, the most natural read is that it is the wireless communication network that is "controlled from a central control center," not the communication unit. *See In re Payless Cashways, Inc.*, 215 B.R. 409, 414-15 (Bankr. W.D. Mo. 1997) ("[P]articipial phrases should be tied to the noun or pronoun they modify, and the noun or pronoun should appear just before or after the phrase."). Likewise, Fossil's references to the specification's discussion of one-way and two-way systems do not support its position. Fossil fails to show that these disclosures have anything to do with a "central control center."

Dated: February 19, 2019               Respectfully submitted,

                                       */s/ Richard C. Lin*
                                       Richard C. Lin

                                       BANYS, P.C.
                                       Christopher D. Banys     SBN: 230038 (California)
                                       Richard C. Lin           SBN: 209233 (California)
                                       Jennifer L. Gilbert      SBN: 255820 (California)
                                       1030 Duane Avenue
                                       Santa Clara, CA 95054
                                       Tel: (650) 308-8505
                                       Fax: (650) 353-2202
                                       cdb@banyspc.com
                                       rcl@banyspc.com
                                       jlg@banyspc.com

                                       LOCAL COUNSEL:

                                       TRUELOVE LAW FIRM, PLLC
                                       Kurt Truelove
                                       Texas Bar No. 24013653
                                       100 West Houston
                                       P.O. Box 1409
                                       Marshall, Texas 75671
                                       Telephone: (903) 938-8321
                                       Facsimile: (903) 215-8510
                                       Email: kurt@truelovelawfirm.com

                                       **ATTORNEYS FOR PLAINTIFFS
                                       CHARLES C. FREENY III, BRYAN E.
                                       FREENY, AND JAMES P. FREENY**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on February 19, 2019.  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.

                                                 /s/ *Richard C. Lin*
                                                    Richard C. Lin